IN THE UNITED STATES COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **LORI WASHINGTON, ex rel. J.W.** | § | |
| Plaintiffs, | § | |
| v. | § | |
| | § | Civil Action No. 4:21-cv-204 |
| **KATY INDEPENDENT** | § | |
| **SCHOOL DISTRICT** | § | |
| Defendant. | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

**NOW COMES** Lori Washington natural mother of and on behalf of her son J.W., who executed a valid power of attorney for her to represent him as Attorney-In-Fact (collectively "Plaintiffs" herein), and files this their *Original Complaint* against Katy Independent School District ("KISD" or "School District") as follows:

### I. JURISDICTION

1. This action arises under the *Individuals with Disabilities Education Act* ("IDEA"), 20 U.S.C. § 1415(i)(2)(A). Jurisdiction is conferred upon the Court pursuant to IDEA, 20 U.S.C. § 1415(i)(3)(A).

### II. VENUE

2. Venue properly lies in this Court pursuant to 28 U.S.C. § 1391(b).

### III. PARTIES

3. J.W. lives with his mother, Lori Washington. The last known address was 4607 Hickory Downs Drive, Houston, Texas 77084, within the KISD catchment area. On or about November 22, 2017, J.W. executed a valid power of attorney giving Lori Washington standing to bring this *First Original Complaint* on behalf of J.W.

4. The Katy Independent School District is a School District organized under the laws of the State of Texas. At all times pertinent to this case, J.W. was a student at the Katy Independent School District. KISD can be served through its Superintendent, Dr. Lance Hindt at 6301 South Stadium Lane, Katy, Texas 77494 or alternatively, through either the Justin Graham or Alaina Smith, both attorneys working within the Office Of General Counsel for the School District.

## IV. PROCEDURAL RESUME

5. On or about December 4, 2017, Plaintiffs filed the original request for a due process hearing ("the Petition") that included the *Individuals With Disabilities Education Act* ("IDEA"), the *Americans with Disabilities Act ("ADA")*, *Section 504 of the Rehabilitation Act of 1973* ("Section 504"), and Constitutional Claims pursuant to 42 U.S.C. Section 1983. (hereinafter referred to as "JWI"). The School District filed a *Plea To The Jurisdiction* seeking dismissal of all non-IDEA claims. Further, that since the incident giving rise to the case occurred on November 30, 2017 then *all* (emphasis added) Plaintiffs' claims were limited by the statute of limitations, as contemplated by 19 TAC 1151©. Plaintiffs argued that a number of tolling theories were operative and in any case certain claims were filed within the limitations period. The Hearing Officer agreed with the School District and Plaintiffs appealed at Civil Action No. 4:18-cv-2752.

6. Plaintiffs filed a *Motion For Summary Judgment* and the District filed their *Response*. The District Court agreed with J.W. in part and the School District in part, remanding the case back to the Texas Education Agency, to address claims that J.W.'s right to a FAPE was violated by the School District *after* (emphasis added) December 4, 2018.

7. J.W. filed a request for a *Due Process Hearing* with the Texas Education Agency ("TEA") and that a Special Education Hearing Officer ("HO") be appointed. On August 24th and 25th of 2020 a hearing was convened. On October 23, 2020 the Hearing Officer determined that Plaintiffs' did not meet their burden of proof on allegations the District violated J.W.'s right to a FAPE in the relevant time period. Plaintiffs now appeal the Hearing Officer's infirm decision. .

## V. NATURE OF ACTION AND RELIEF SOUGHT

8. This action is brought under IDEA and appeals the decision of a Special Education Hearing Officer appointed by the Commission of Education of the State of Texas to consider the tolling of the one-year statute of limitations pursuant to 19 Tex. Admin. Code § 89.11519(c) and 20 U.S.C. § 1415(f)(3)(D). The hearing officer issued a decision on October 23, 2020 finding that Plaintiffs' failed to meet their burden of proof on claims the School District filed to provide J.W. what is termed a *Free And Appropriate Public Education* ("FAPE") as otherwise required by the Individuals With Disabilities Education Act. As will be more fully shown below and over the course of this litigation, the Hearing Officer's decision was contrary to the applicable law, and was not supported by the evidence presented by the parties.

## VI. FACTUAL RESUME

A. ABOUT J.W.

9. J.W. was born on June 29, 1999 and as of this writing is twenty-ones years old. His mother, Lori is a former Correctional Officer and his father is a Police Officer. In fact before the Tasing Incident he looked up to police as heroes. During the relevant time

upon which this cause is based they lived in the Katy ISD catchment area and J.W. was a student at Mayde Creek High School. In late August of 2017 Hurricane Harvey hit Texas and since that time he and his mother have often been homeless.

10. Prior to attending school at the Katy ISD J.W. went to the Cy-Fair ISD where he was diagnosed with Intellectual Disability (*a/k/a mental retardation*) and an Emotional Disturbance which carried to his new school. His mental and behavioral disabilities affect his daily functioning, ability to communicate and control his emotions. As such he was a recipient of Special Education Services as contemplated by the *Individuals With Disabilities Education Act* ("IDEA"). J.W. communicates well when he is calm. Because of his disabilities he was easily victimized at the hands of other students and would get upset as his ability to communicate calmly and receive information is affected. His reading is at best, a third or forth grade level and while at Cy-Fair children made fun of his mental retardation.

B. J.W. TRANSFERS FROM CY-FAIR ISD TO KATY ISD

11. When J.W. transferred to the Katy ISD he was moved into a self-enclosed classroom and was provided behavioral accommodations. One was called the PASS ("Positive Approach to Student Success") Program which included social skills, behavioral supports and other types of individual applications for students like J.W. The program is set up to have the PASS representative walk by the classroom approximately every 15 minutes to see if any student is in distress and if so walk with the student to a quiet spot. Of course, a student could do it on their own. J.W's IEP determined he would have use of the PASS system services for 180 minutes every six weeks, or about 30 minutes per week, though its usage

depended upon his needs. The District had no way to determine how much is used or its effectiveness.

C.   J.W. IS TASED BY THE SCHOOL RESOURCE OFFICER

12.  On November 30, 2016 J.W. was being bullied by another student in his special-needs classroom and became upset. In order to calm himself down J.W. attempted to retreat to his "safe space" or "chill out room" to take a break as contemplated in the PASS Program. Unfortunately the safe space was unavailable and there was no "back-up plan.". He then decided to walk outside of the school to calm himself, but District staff blocked his exit. A School Resource (Police) Officer shot J.W. repeatedly with a Taser Gun which caused hin to urinate and defecate on himself. He was absolutely traumatized by the incident and was and is still scared to return to school. He and his mother went to a physician who advised him to stay home until the Katy ISD could address the trauma.[1]

13.  Mother learned there was a video of the incident. Shortly after the incident occurred she asked to School Officials if she could see the video of the incident but was not able to do so. On December 16th what is termed an *Admission, Review & Dismissal* ("ARD") Committee Meeting was convened but the Committee refused to discuss the incident. She tried to speak with numerous people to find out what happened, and even went to the Superintendent's Office, but no one would be truthful with her. She did eventually see the video of the incident.

D.   AFTER THE INCIDENT J.W. IS ABSENT FROM SCHOOL

---

1. Petitioners submitted the videos as an exhibit. The School District objected and the Hearing Officer granted said objection. Petitioners asked for an Offer of Proof and plan to file a motion with this court so that this Additional Evidence" be accepted into the appeal.

14. J.W. returned to school for a brief period in January of 2017. A parent of a female student had called J.W. and the School District, concerned that he had shared sexually explicit text messages with his daughter. He was removed from class where he was questioned by SRO Paley and another ISD SRO who had been involved in his tasing. His phone was confiscated and never returned. After this incident with the SRO's J.W. did not attend school for many months. One reason was because he was embarrassed and humiliated because he had defecated and vomited during the Tasing Incident. Another was because he was terrified of Police Officers. His Counselor told him that when he saw an Officer at school he should drop to his knees and hold up his hands, so as to avoid additional trouble.

15. The District refused to discuss what led up to the Tasing Incident, the trauma it caused J.W., or his fear of the police. Accordingly, no accommodations or change to his IEP or BIP was ever discussed. As a result he did not feel safe at school. His mother went to the school in person several times attempting to procure help for J.W. and recollects that between the Tasing and May 22nd ARDC Meeting, she requested an ARD committee meeting at least four (4) times. Each time she told the staff person she was speaking with she wanted to discuss what transpired in J.W.'s classroom prior to the Tasing Incident but no one would do so.

E. THE DISTRICT DOES NOT SEEK INFORMATION FROM HIS PROVIDERS

16. KISD never requested any documents, authorizations, or completed consent forms from Ms. Washington related to provision of homebound services for J.W. KISD never requested Ms. Washington authorize KISD representatives to speak with or obtain

information from J.W. 's medical (Arnold Carruthers) or mental health care providers. Ms. Washington never received consent forms from KISD related to provision of homebound services and thus could not sign any such forms. Ms. Washington testified that, had she received such consent forms, she would have signed them, which makes sense as she given them the names of the physician and therapist in the first instance. Importantly, staff knew how to contact Ms. Washington through J.W. 's brother. District staff testified at the hearing they tried a number of times to contact Ms. Washington about scheduling an ARDC Meeting and procuring the signatures for the consent forms but there is no documentation in support of this proposition. Rather during this same period mother repeatedly requested an ARDC Meeting be convened but it never was and then finally one was scheduled.

F. THE SPRING OF 2017 AND THE ARD COMMITTEE MEETING

17. In preparation for the ARDC Meeting the District completed a *REED* (*Review Of Existing Evaluation Data*). A close review shows that, for all practical purposes it's a "carbon copy" of the REED completed by the Cy-Fair ISD completed in November of 2015 after J.W. (merely) hit another student. In fact, the last time last time J.W. had complete *Full and Individual Evaluation* ("FIE") was in 2010.. This *new* REED failed to even list, let alone account for incidents occurring at the Katy including hitting a wall with a closed fist and injuring his knuckles and of course, the Tasing Incident. In fact, in listing all the various assessments that are part of the REED it has absolutely nothing from the period he is at the Katy ISD but merely repeated what was in the Cy-Fair ISD report. Importantly the new REED doesn't address the failure of the previous PASS system, with

no "back up" plan for J.W. if he went to the PASS room and it was already occupied. The PASS program operative at the time of the Tasing remained the same. Nor was any de-escalation training for staff provided.

18. The ARD Committee Meeting notes of May 22, 2017 reflect that mother told staff J.W. reported he believed staff at school hated him and he was going to die. Additionally he no longer wanted to leave the home. Mrs. Washington stated she wanted J.W. to go to school so he could be around other people but had concerns for him being around the Police Officers who tased and restrained him. She suggested that the LSSP, Jennifer Jones reach out to J.W. to assist in getting him back to school, also that the team someone contact his brother. Also that staff contact her by phone for everything. Importantly, she again asked about what led up to hhe Tasing and how the PASS Program failed. His home room teacher Mr. Cupp noted J.W. 's concerns about being bullied. The LSSP suggested a functional behavioral or counseling assessment be completed. Kathy Williams suggested an occupational therapy consult be provided. His graduation course requirements are decreased. Not surprisingly, the *Behavior Intervention Plan* remained the same. Mother signed necessary consents. The *Notices* for a FIE were completed and dated the same day as the ARDC Meeting for Emotional/Behavioral and Health but once again just like before when they had opportunity to do so, no one from the District ever filled it out, or actually presented to mother for signature.

19. In the past the various ARD Committee's addressed J.W. 's transition wishes. For instance, while at Cy-Fair ISD he wanted to a Welder or in the Air Force (and liked cooking). At Katy ISD he talked about being a Firefighter. There does not appear to be

any IEP or plan on how actualize any of his wishes. There is no actual assessment. No one from an outside agency ever attended. Katy ISD staff were more interested in having J.W. graduate and get out of the District than be prepared for the outside world. Apparently it was the only way to stop the harassment he had and was still experiencing at school.

20. During that May 2017 ARD committee meeting, Staff suggested the parties have a separate meeting to discuss the Tasing Incident, including the events in J.W. 's classroom that precipitated the Incident but it never happened. Ms. Washington asked for additional supports for J.W. in the classroom to prevent future incidents like the Tasing, including additional options for de-escalation if J.W. became upset but none were provided. She again attempted to discuss the fact that J.W. continued to be harassed at school and was traumatized due to the tasing incident but KISD representatives forbid any such discussion and explained to her that this too was not the appropriate time to discuss these concerns.

21. Ms. Washington was not in agreement with the IEP devised that day because KISD forbid discussion of the tasing. In fact, when asked to sign the IEP signature page, she protested and explained she was not in agreement because a discussion of the events in J.W. 's classroom that precipitated the Incident was necessary to prevent a similar incident in the future. Nevertheless, staff told her she was required to sign the IEP because she agreed with the remainder of the IEP as well as to confirm her attendance at the ARD committee meeting.

22. Near the end of the 2016-2017 school year, Ms. Washington went to the school in person

and spoke with the KISD counselor to try to help her struggling son. Ms. Washington asked the counselor whether J.W. could attend a different school but was told he could but that this would be at her expense. She also asked the counselor about home schooling J.W. but was told that, because of J.W.'s special needs and the fact that it was late in the school year, that was not an option for him. Even when mother requested the District provide transportation for him to go to another school so as to avoid the hostility he was experiencing, they refused to so so.

23. Save for a few days in January J.W. did not attend school the rest of the entire Spring Semester. The District's Special Education Director agrees that he could not have received or benefitted from a *Free Appropriate Public Education* during this period. In fact, he got zeroes in all his subjects and didn't pass necessary course work.

F.  A COUNSELING EVALUATION IS COMPLETED FOR J.W.

24. On October 2, 20017 a Counseling Evaluation was completed by Jennifer Jones, LSSP. It reports he "missed several days of school" and is fearful of school because of a "significant incident." Like everyone else at the Katy ISD she refuses to even discuss his absenteeism, school phobia, hatred of staff and himself and as a matter of course, failed to address in any remedial way a manner to address these problem. The evaluation noted J.W. was seeing a private doctor and therapist but she failed to communicate with either about his needs. The evaluator rejected the idea he needed any counseling related to school or school phobia, or trauma or related educational issues.

G.  THE FALL 2017 ARD COMMITTEE MEETING

25. On October 18, 2017 was being bullied by another student who stabbed him with a

pencil, so he got upset and punched the glass container protecting the fire extinguisher. On November 3, 2017, almost a year after the incident an ARD Committee Meeting was convened and *Individualized Educational Plan* ("IEP") was developed but it failed to address any of the issues mother noted in the ARD Committee in April of the previous semester. The team rejected the need for counseling based upon the LSSP report. There was no change to the BIP even though J.W. continued to have major problems with bullying, self-injurious behaviors, attending school and school phobia.

26. Save for a few days, J.W. did not attend much of school in August, September and October. The District's Special Education Director again agreed that he could not have received or benefitted from a *Free Appropriate Public Education* during this period either.

27. Between the May 22, 2017 ARD committee meeting and the Fall ARD committee meeting, not surprisingly J.W. still was not progressing academically. During that time, on of J.W.'s teachers, Ms. Rice, called Ms. Washington and told her that it appeared that J.W. was not trying anymore. During that call, despite the fact that J.W. could attend school until he was at least 21 years of age, Ms. Rice also recommended that Ms. Washington should agree to accept the graduation plan so he could graduate and leave KISD. She admitted this was the only way to end the harassment J.W. experienced at school.

H.   J.W. 'S CURRENT STATUS

28. Since the Tasing Cognitive Testing demonstrates his IQ went down. Currently, J.W. does not leave the family's home and has no friends and won't even go to counseling anymore.

He ev en quit going to church because it began having security guards present during church services.  The last time he became so incredibly upset, he began rocking back and forth, hitting himself in the head and begging to leave, so the family did so. Even though the rest of the family has regular gatherings J.W.  is longer attends due to his unresolved trauma. J.W. overeats to comfort himself, is far less active and has gained approximately 100 pounds.

I. REMEDIES THAT LORI WASHINGTON WANTS FOR HER SON

29. At the Hearing Ms. Washington stated want the Hearing Officer to *Order* the District to fulfill its duty to provide her son a *Free Appropriate Public Education* an *Order* an FIE in all areas of his disability, including for emotional and behavioral needs, assistive technology, recreation and leisure and social skills.  All these are important because he is not engaging with the outside world, continues to struggle with academic tasks, like reading and math and has no work skills.  Recently he has shown an interest in animals. Additionally, s believes he would benefit from counseling, as well as Family Counseling and In-Home & Family Support Services for everyone.  Further, based upon all the time he missed school in she could like him to receive a couple of hundred hours in compensatory education and permit him to remain in school past his 22nd birthday to receive such services.

## VII.  ISSUE(S) THE HEARING OFFICER CONSIDERED

30. Whether the School District failed to provide J.W.  a safe, non-hostile educational environment, thus denying Student educational opportunities (as evidenced by persistent bullying).

31. Whether the School District failed to implement Student's Individualized Education Program ("IEP") and Behavior Intervention Plan ("BIP") by failing to use positive

behavioral interventions and supports, and other identified strategies to address Student's behaviors that were established in Student's IEP/BIP.

32. PROCEDURAL: Whether the School District failed to convene an Admission, Review & Dismissal ("ARD") Committee Meeting and significantly impeded the Parent's opportunity to participate in decision making process regarding the provision of FAPE.

33. PROCEDURAL: Whether the School District failed to appropriately respond to and remedy the effects of the incident on Student, including:

    a.  Petitioner was forced to keep Student home after he was tased "due to fear for his safety while at school";

    b.  Petitioner repeatedly requested an IEP committee meeting, but the School District did not schedule one until April 24, 2017, which the School District then cancelled;

    c.  at the rescheduled meeting on May 22, 2017, the School District refused to discuss the tasing;

    d.  the School District never scheduled a meeting to discuss the tasing; and

    e.  the School District never responded to Petitioner's requests to speak to a counselor about how Student's plan would address the anxiety he suffered at school from the tasing.

## VIII. THE HEARING OFFICER'S DECISION

34. J.W. filed a *Post Hearing Brief* addressing the above noted issues and the District filed their own. Among many items, he argued that because he received absolutely no educational services in the Spring of 2018, the School District failed to fulfill its mandate to provide him a FAPE during that period. Even though District staff agreed with Plaintiff on this issue, amazingly the Hearing Officer found for the School District. This finding was a gross error of law.

35. Of course one of the reasons he was not provided any academic or non-academic services in the Spring of 2018 was because the School District failed to call an *Admission, Review*

*& Dismissal Committee* ("ARDC") Meeting even though they were required to do so under state law and related regulations. J.W. argued this *per se* failure to follow the law also effected his ability and right to receive a FAPE. The Hearing Officer rejected J.W.'s argument even though the facts and law are absolutely clear and unequivocal. This too was a gross error of law.

36. The evidence is absolutely overwhelming that J.W. was traumatized by the tasing incident. The evidence is uncontroverted that mother brought up this concern in almost every single interaction with District Officials. The evidence is likewise uncontroverted that not only did the District fail to provide a J.W. any service to address his trauma, they refused to even talk about it at the ARDC Meetings. address these concerns. J.W. argued that this failure to address this absolute primary concern absolutely violated his right to a FAPE. The Hearing Officer again rejected J.W.'s argument even though the facts and law are once again, absolutely clear and unequivocal. Once again, the Hearing Officer committed a gross error of law.

37. In the Fall 2018 semester J.W. barely went to school. He should have once again received zeroes in all his classes but his teacher decided to give him passing grades for the few days he was in attendance so he could graduate. J.W. argued he did not receive a FAPE during this period as well. Nevertheless, the Hearing Officer again found for the School District. This finding was also a gross error of law.

38. There are additional errors by the Hearing Officer that J.W. will later address in his *Motion For Summary Judgement* on the topic.

## IX. <u>CLAIMS FOR RELIEF</u>

39. The Hearing Officer's findings of fact and conclusions of law with respect to J.W.'s claims the School District failed to provide him a *Free Appropriate Public Education* during the relevant time period were legally erroneous and directly contrary to the evidence and thus, it should be reversed and vacated by this Court. Accordingly the District Court should GRANT this appeal. f

## X. CONCLUSION AND PRAYER

40. WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Court receive the records of the administrative proceedings as required by the IDEA, and GRANT any future request for additional evidence, and:

    a. find that the School District failed to provide J.W. a FAPE during the period in question, whether in total or in part;

    b. that the Hearing Officer erred in characterizing the facts;

    c. that the Hearing Officer erred in applying the law;

    d. that this Court should enter a judgment reversing and vacating the Hearing Officer's decision;

    e. that Plaintiffs be declared prevailing parties and have attorneys fees and relevant costs reimbursed by the School District; and

    f. any other and further relief as the Court determines is appropriate, whether at law or equity or as to both.

Respectfully submitted,

*/s/ Martin J. Cirkiel*
Martin J. Cirkiel, Attorney
State Bar No.: 00783829
marty@cirkielaw.com [Email]

        Holly Griffith Terrell, *Of Counsel*
        State Bar No. 24050691
        holly@cirkielaw.com [Email]

        Cirkiel & Associates, P.C.
        1901 E. Palm Valley Boulevard
        Round Rock, Texas  78664
        (512) 244-6658 [Telephone]
        (512) 244-6014 [Facsimile]

        Drew Willey, Attorney
        State Bar No.: 24093371
        Drew Willey Law
        1520 Rutland Street
        Houston, Texas 77008
        (713) 739-9455 [Telephone]
        (713) 510-1950 [Facsimile]
        drew@law-dw.com [Email]

        **ATTORNEYS FOR PLAINTIFFS**