**IN THE UNITED STATES COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **LORI WASHINGTON, ex rel. J.W.** | § | |
| **Plaintiffs,** | § | |
| **v.** | § | |
| | § | **Civil Action No. 4:21-cv-204** |
| **KATY INDEPENDENT** | § | |
| **SCHOOL DISTRICT** | § | |
| **Defendant.** | § | |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, JUDGMENT ON THE ADMINISTRATIVE RECORD

Respectfully submitted,

*/s/ Martin J. Cirkiel*
Martin J. Cirkiel, Attorney
State Bar No.: 00783829
marty@cirkielaw.com [Email]

Holly Griffith Terrell, *Of Counsel*
State Bar No. 24050691
holly@cirkielaw.com [Email]

Cirkiel & Associates, P.C.
1901 E. Palm Valley Boulevard
Round Rock, Texas  78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]

Drew Willey, Attorney
State Bar No.: 24093371
Drew Willey Law
1520 Rutland Street
Houston, Texas 77008
(713) 739-9455 [Telephone]
(713) 510-1950 [Facsimile]
drew@law-dw.com [Email]

**ATTORNEYS FOR PLAINTIFFS**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.      PROCEDURAL RESUME AND SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . 1

II.     STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    EVIDENCE CONSIDERED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.     FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

V.      BURDEN OF PROOF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

VI.     STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

VII.    STANDARDS TO DETERMINE A FREE AND APPROPRIATE EDUCATION . . . . 11

VII.    THE DUE PROCESS HEARING AND HEARING OFFICER DECISION  . . . . . . . . 12

IX.     RELIEF REQUESTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

X.      CONCLUSION AND PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

**TABLE OF AUTHORITIES**

**<u>FEDERAL CASES</u>**

<u>SUPREME COURT</u>

<u>Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley</u>, 458 U.S. 176, 206, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,12,15

<u>Buckhannon Board & Care Home, Inc. v. West Virginia</u>, 532 U. 598 (2001) . . . . . . . . . . . . . . 24

<u>Cedar Rapids Community School District v. Gwinnett</u>, 526 U.S. 66; 119 S. Ct., 992 (1999). . . 19

<u>Endrew F. V. Douglas County School Board, Re-1</u>, 137 S. Ct. 988, (2017) . . . . . . . . . . . . . 12, 15

<u>COURTS OF APPEAL</u>

<u>Adam J. b/n/f Mr. & Mrs. J. v. Keller Indep. Sch. Dist.</u>, 384 F.3d 804, 809 (5th Cir. 2003)   12, 16

<u>Caldwell Independent School District v. Joe P.</u>, 551 F. App'x 140, 62 IDELR 192 (5th Cir. 2014)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

<u>Carlisle Area School v. Scott P. by and through Bess P.</u>, 62 F.3d 520, 528 (3rd Cir. 1995), *cert denied,* 517 U.S. 1135 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Cypress-Fairbanks ISD v. Michael F.</u>, 118 F.3d 245, 252 (5th Cir. 1997)  . . . . . . . . . . . . . . . . 10

<u>Daniel R.R. v. State Bd. Of Educ.</u>, 874 F.2d 1036, 1041 (5th Cir. 1989) . . . . . . . . . . . . . . . 12, 16

<u>Deal v. Hamilton County Board of Education</u>, 392 F3d 840 (6th Cir. 2004). . . . . . . . . . . . 19, 20

<u>El Paso Indep. Sch. Dist. v. Richard R.</u>, 591 F.3d 417, fn. 4, (5th Cir. Tex. 2009) . . . . . . . . . . 24

<u>Flour Bluff Indep. Sch. Dist. v. Katherine M. by Lesa T.</u>, 91 F.3d 689 (5th Cir. 1996). . . . . . . 19

<u>Houston Indep. Sch. Dist. v. Bobby R.R.</u>, 200 F.3d 341 (5th Cir. 2000) . . . . . . . . . . . . . . . 12, 16

<u>Hous. Indep. Sch. Dist. v. V.P. ex rel. Juan P.</u>, 582 F.3d 576, 583 (5th Cir. 2009) . . . . . . . . . . 16

<u>Hovem</u>, *Dissent* of Justice Carl E. Stewart at 690 F.3d at p. 399 . . . . . . . . . . . . . . . . . . . . . . . . <u>21</u>

Klein Indep. School Dist. v. Hovem, 690 F.3d 390, 391 (5th Cir. 2012) . . . . . . . . . . . . . . . . . . 16

Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ., 397 F.3d 77, 82 (2d Cir.2005) . . . . 11

Michael F., 118 F.3d at 248 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Parents of Student W. v. Puyallup Sch. Dist. No.3, 31 F.3d 1489 (9th Cir. 1994). . . . . . . . . . . 23

R.S. v. Board of Dirs. of Woods Charter Sch., 806 F. App'x 229 (4th Cir. 2020, unpublished) . 23

Reid v. District of Columbia, 401 F. 3d 516 (D.C.C. March 25, 2005) . . . . . . . . . . . . . . . . . . . 21

Richardson Indep. Sch. Dist. v. Michael Z, 580 F.3d 286 (5th Cir. 2009)  . . . . . . . . . . . . . . . . 16

S.H. v. State Operated School District of Newark, 336 F3d 260, 272 (3rd Cir. 2003)  . . . . . . . 19

Teague ISD v. Todd L., 999 F.2d 127, 131 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

W.G. v. Board of Trustees of Target Range Sch. Dist., 960 F.2d 1479, 1486 (9th Cir. 1992). . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**DISTRICT COURTS**

A.W. Middletown Area Sch. Dist. 1:13-cv-2379, 115 LRP 4105 (M.D. PA. Jan. 28, 2015). . . . 20

Carl D. v. Special Sch. Dist., 21 F. Supp. 2d 1042, 1053 (E.D. Mo. 1998) . . . . . . . . . . . . . . . . 21

Cocores v. Portsmouth New Hampshire Sch, Dist., 779 F. Supp. 203 (D.N.H. 1991). . . . . . . . 22

D.B. v. Bedford Cnty. Sch. Bd., 708 F. Supp. 2d 564, 584 (W.D. Va. 2010) . . . . . . . . . . . . . . 21

Edmonds School District v. A.T., 299 F. Supp. 3d 1135 (W.D. WA, November 7, 2017) aff'd 780

F. App'x 491 (9th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Garris v. District of Columbia, 210 F. Supp. 3d 187 (D.C., September 28, 2016). . . . . . . . . . . 18

Hill v. District of Columbia, 14-cv-1893, 116 LRP (D.C., August 26, 2016) . . . . . . . . . . . . . . 18

Jana K. V. Annville Cleona School District, 39 F. Supp. 3d 584 (M.D. PA, August 18, 2014) . 23

Joaquin v. Friendship Public Charter School, 14-01119 (D.C.C., September 3, 2015)  . . . . . . . 22

M.E. and T.E. v. New York City Dep't of Educ., CITE 71 IDELR 125 (S.D. N.Y. 2018) . . . . 20

Mary McLeod Bethune Day Acad. Pub. Charter Sch. v. Bland, 555 F. Supp. 2d 130 (D.D.C. 2008)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Reid v. D.C., 401 F.3d 516 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

San Dieguito Union High Sch. Dist. v. Guray-Jacobs, 04cvl330 DMS (S.D. CA, October 27, 2005)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Smith v. Parham, 72 F. Supp. 2d 570, 576 (D. Md. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## STATE COURTS

El Paso Indep. Sch. Dist., 34 IDELR 226 (SEA TEX 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 20, 24

Student v. Southwest Region School District, Alaska State Educational Agency, 112 LRP 22779

(April 11, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## FEDERAL LAW

Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. 1401 et seq. . . . . . . . . . Passim

*Free Appropriate Public Education* ("FAPE") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

20 U.S.C §1400(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15

20 U.S.C. §1412(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

20 U.S.C. §1415(i)(2)(A),(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

20 U.S.C. § 1415(i)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

20 U.S.C. § 1415(i)(2)( c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## CODE OF FEDERAL REGULATIONS

34 C.F.R. §300.101(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Lori Washington natural mother of and on behalf of her son J.W., who executed a valid power of attorney for her to represent him as Attorney-In-Fact (collectively "Plaintiffs" herein), and files this their *Motion For Summary Judgment Or In The Alternative Judgment On The Administrative Record,* alleging that the Katy Independent School District ("KISD" or "School District") failed to provide J.W. a *Free And Appropriate Public Education* ("FAPE") during the relevant time period giving rise to this cause, and respectfully proceeds as follows:

## I. <u>PROCEDURAL RESUME AND  SUMMARY OF THE ARGUMENT</u>

1.      The Court is well-familiar with the history of this cause. On or about on November 30, 2016 was tased by a Katy ISD School Resource Officer. Pursuant to the *Individuals With Disabilities Education Act* ("IDEA") on or about December 4, 2017, Plaintiffs filed their *Request for a Due Process Hearing* ("the Petition" or "DPH") with the *Texas Education Agency* ("TEA") set at Docket No. 078-SE-1217.  Among other things J.W. argued the District failed to provide him a non-hostile educational environment, did not adequately implement his *Individualized Educational Plan* ("IEP") or his *Behavioral Intervention Plan* ("BIP") or schedule *Admission, Review & Dismissal* ("ARD") Committee Meetings within a reasonable time violating his right under the IDEA to what is termed a *Free Appropriate Public Education* ("FAPE"). [DE# 8, p. 0278, ¶49- 52]. The School District argued all J.W.'s claims were barred by the one-year statute of limitations operative in Texas for IDEA claims pursuant to 19 TAC §1151( c).  The Hearing Officer ("HO") agreed and dismissed  all non-IDEA claims *without prejudice*  [DE# 8, p.  320- 326]. Plaintiffs appealed the Hearing

Officer Decision at Civil Action No. 4:18-cv-2752 on June 18, 2018. This Court granted the request in part with the case remanded back to the TEA asking the a HO to determine what claims were filed within the limitations period. 2020 U.S. Dist. LEXIS 49272 * (S.D. TX-Houston Division, March 20, 2020).

2. J.W. filed the remanded case with the TEA on March 20, 2020 and was set at Docket No. 237-SE-0320. [DE# 8, p. 0027- 0042]. The *Due Process Hearing* was convened on August 24-25, 2020. The Hearing Officer determined that the School District did adequately implement J.W.'s IEP and BIP, did schedule the ARD Committee Meetings within a reasonable time, did not violate any of J.W.'s substantive or procedural rights under the IDEA and did not deny J.W. a FAPE. [DE# 8, p. 0001- 0021].

3. J.W. appealed that decision. Among other things he notes the record reflects, and it is uncontroverted that he barely attended school for either or both the Spring 2017 and Fall 2017 semesters. As he was not there, how could the School District have "adequately implement J.W.'s IEP and BIP?" In fact the record reflects, and it again uncontroverted he received zeroes in all the Spring 2017 classes and only passed the Fall 2017 course work because staff thought it would help him graduate, not because he actually fulfilled course requirements. Not withstanding the glaring failures by the School District, as noted above, the Hearing Officer found in favor of the Katy Independent School District and not J.W. and erred in doing so.

## II. <u>STATEMENT OF THE ISSUES</u>

4. Did the Hearing Officer err when determining that the Katy Independent School District provided J.W. a *Free Appropriate Public Education* ("FAPE") during the time periods made

the basis of his complaint?

### III.  EVIDENCE CONSIDERED

5.      Plaintiffs rely upon all the Administrative Record filed in this cause [DE# 7] and

incorporated herein as if fully set forth and the prior case file, with the same parties, set as

477 F. Supp. 3d 583 (S.D. TX- Houston Div., March 20, 2020).

### IV.  FACTUAL RESUME

A.      ABOUT J.W.

6.      J.W. was born on June 29, 1999 and as of this writing is now twenty-two years old. [DE# 8,

p, 1586].   His mother, Lori is a former Correctional Officer [HTII, p. 334, l. 24-25] and his

father is a Police Officer. In fact before the Tasing Incident he looked up to police as heroes.

[DE# 8, p. 1987; p. 110, l. 125- p. 111, 1. 12].   During the relevant time upon which this

cause is based they lived in the Katy ISD catchment area where J.W. was a student at Mayde

Creek High School.  [HTII, p. 333, l. 1-14].  Before attending Katy ISD J.W. went to the

Cy-Fair ISD.   There he was diagnosed with an  *Intellectual Disability* (a/k/a mental

retardation) and an *Emotional Disturbance* ("ED") which carried over to his new school.

[HTI, p. 40, l. 16-17].   As such he was a recipient of Special Education Services as

contemplated by the IDEA.   His reading is at best, a third or forth grade level [DE# 8, p.

1796; HTI, p. 111, l. 9-13].  When calm he can communicate well but when bullied he gets

upset so his ability to receive and communicate information is affected. [DE# 8, 1775].

B.      J.W. TRANSFERS FROM CY-FAIR ISD TO KATY ISD

7.      On September 22, 2016 the Katy ISD convened an ARD Committee Meeting for J.W.  [DE#

8, p. 1773- 1807].  Among other things it reaffirmed his eligibility as Intellectual Disability

("ID") and Emotional Disturbance ("ED")[DE# 8, p. 1773] and that in regard to state required assessments he had failed in Algebra I, Biology I and English I and II [DE# 8, p. 1774].   At the time his plan after high school was to become a firefighter thought it noted his social skills were deficient and got easily frustrated and angered, which would be obvious impediment to achieve that goal, or any others for that matter. [DE# 8, p. 1775].  Because of his cognitive impairments and behavioral deficits he was placed into what was called Life Skills Classroom and provided what was termed a PASS Program to help address those behavioral needs. [DE# 8, p. 1776].  The ARD Committee offered J.W.'s IEP's in English, Math, Environmental Systems, U.S. History, Entrepreneurship and Touch Data Systems and aq Behavioral Plan and Health [DE# 8, p. 1779- 1787] all with then present levels of performance and annual goals.   The Behavioral Plan was again more fully described with interventions, goals, data collection and reporting. [DE# 8, p. 1787].  The IEP also addressed various accommodations that the District needed to provide J.W. to help effectuate implementation of the plan. [DE# 8, p. 1789].

C.    J.W. IS TASED BY THE SCHOOL RESOURCE OFFICER

8.    On November 30, 2016 J.W. was being bullied by another student in his special-needs classroom and became upset.  J.W. attempted to retreat to his "safe space" or "chill out room" as contemplated in the PASS Program but the safe space was unavailable.  He then decided to walk outside of the school to calm himself down but District staff blocked his exit including a SRO who shot J.W. with a Taser Gun.  As a result J.W. urinated and defecated on himself and was traumatized by the incident.  He was and continues to be scared to return to school.  He and his mother went to a physician who advised him to stay home until the

Katy ISD could address the trauma. [DE# 8, p. 1470; HTII, p. 437- 445]; 477 F. Supp. 3D 583 (S.D. TX, -Houston Division, March 20, 2020).  Mother wanted to find out what led up to the incident but no one would tell her.  She even went to the Superintendent's Office but no one would tell her. [HTII, p. 341, l. 13 through p. 345].  She also went to the school in person several times attempting to procure help for J.W. [DE# 8, p. 1973, p.56, l. 4 – 6; p. 1994, p. 139, l. 19 – p.140, l. 18] and that between the Tasing and May 22nd ARDC Meeting, she requested an ARD committee meeting at least four (4) times. [DE# 8, p. 1983, p. 96, l. 17 - 25]. Each time she told the staff person she was speaking with she wanted to discuss what transpired in her son's classroom prior to the Tasing Incident but no one would do so. [DE# 8, p. 1995,  p.142, l.21 – p.144, l. 6].  She provided staff the name of her son's physician. Importantly, staff knew how to contact Ms. Washington through J.W.'s brother. [HTII, p. 351, l. 5-25; p. 352, l. 1-3; JD# 32, 33]

9.    Right away his teachers noted  problems with attendance and was not getting any class credit. [DE# 8, p. 1651, 1652]. One reason was because he was embarrassed and humiliated because he had defecated and vomited during the Tasing Incident. [DE# 8, p.1973, p. 53, l. 15 – 20]. Another was because he was terrified of Police Officers. His Counselor told him that when he saw an Officer at school he should drop to his knees and hold up his hands, so as to avoid additional trouble. [DE# 8, p. 1971, p. 48, l. 16-25; p. 1992, p. 132, l. 1-19; p. 1993, p. 134, l. 1 -25].

D.    AFTER THE INCIDENT J.W. IS ABSENT FROM SCHOOL

10.   J.W. returned to school for a brief period in January of 2017 but due to the trauma did not attend school for Spring 2017 semester.  During this period he missed all or part of 98 days.

[DE# 8, p. 1704- 1716].  In fact, at the Due Process Hearing the District's Special Education Director admitted the ARD Committee never addressed his absenteeism as an issue. [DDE 38, p. 2327, l. 22- 25, p. 2328, l. 1-3].  The Special Education Director agreed that he could not have received or benefitted from a *Free Appropriate Public Education* during this period. She was also aware he received zeroes in his all his subjects and didn't pass necessary course work. [DE# 8, p. 1653, 2331- 2332].

11.     The ARD Committee met in and around May 22ⁿᵈ to plan for the Fall 2017 Semester. Mother told staff that J.W. believed staff  hated him and he was going to die.  Additionally he no longer wanted to leave the home.  She wanted J.W. to return but had concerns he would be around the Police Officers who tased and restrained him. She suggested that the LSSP, Jennifer Jones reach out to Jevon to assist in getting him back to school, also that the team someone contact his brother. [DE# 8, p. 2528, p. 353, l. 1-25; p. 2529, p. 354, l. 1-17; DE# 8, p. 1872- 1873].

12.      Mother very definitively wanted to address the classroom incidents that led up to the tasing incident to assure a BIP was developed to assure it would not happen again.  She also wanted to discuss the resultant trauma and problems J.W was having in attending school, but was told the ARDC was not the correct place to discuss, what staff characterized as a disciplinary problem. [DE #8, p. 1967, p. 32, 1. 12-23].   She was told another meeting would be convened to address these concerns but was not. [DE# 8, p. 1968, p. 34, l. 4-11; p. 1990, p. 122, l. 12-22].  Instead of providing a new psychological evaluation of J.W. the District used one from his stay at the Cy-Fair ISD which was actually completed in 2010.  [DE# 8, p. 1818- 1828].

13.   In late August of 2017 Hurricane Harvey hit Texas and for a significant time thereafter he and his mother have been homeless. [DE# 8, p. 2508, l. 1-14].

14.   On October 2, 20017 a Counseling Evaluation was completed by Jennifer Jones, LSSP. It reports he "missed several days of school" and is fearful of school because of a "significant incident." Like everyone else at the Katy ISD she refuses to even discuss his absenteeism, school phobia, hatred of staff and himself and as a matter of course, failed to address in any remedial way a manner to address these problem. The evaluation noted J.W was seeing a private doctor and therapist but she failed to communicate with either about his needs. The evaluator rejected the idea he needed any counseling related to school or school phobia, or trauma or related educational issues. [DE# 8, p. 1892- 1894].

15.   Near the end of the 2016-2017 school year, Ms. Washington went to the school in person and spoke with the KISD counselor to try to help her struggling son.  Ms. Washington asked the counselor whether J.W. could attend a different school but was told he could but that this would be at her expense. [JD# 8, p. 1973, p. 53, l. 21 – p.  55, l. 1- 25]. She also asked the counselor about home schooling for J.W. but was told that, because of his special needs and the fact that it was late in the school year, that was not an option for him. [DE# 8, p. 1973, p. 55, l. 2 – 22].  Even when mother requested the District provide transportation for him to go to another school they refused to so.  [JD# 8,p. 1972, p. 49, l. 22- p. 50, l. 20].

16.   Between the May 22, 2017 ARD committee meeting and the Fall ARD committee meeting, not surprisingly J.W. still was not progressing academically. During that time, on of J.W.'s teachers, Ms. Rice, called Ms. Washington and told her that it appeared that J.W. was not trying anymore. [DE# 8, p. 1972, p. 51, l. 2 - 23].  During that call, despite the fact that J.W.

could attend school until he was at least 21 years of age, Ms. Rice also recommended that Ms. Washington should agree to accept the graduation plan so he could graduate and leave KISD. She admitted this was the only way to end the harassment J.W. experienced at school. [HT II, p. 358, l. 1-10; JD# 8, p. 1972, p. 52, l. 2 - 8; p. 1993, p. 136, l. 24 - p. 138, l. 2].

17.     Save for a few days, J.W. did not attend much of school in the Fall 2017 and again for the Spring 2018 Semesters and missed all or part of 105 days.   The District's Special Education Director again agreed that he could not have received or benefitted from a *Free Appropriate Public Education* during this period either. [DE# 8, p. 1717 - 1727; HTI, p. 156, l. 10-25; p. 157, l. 1-4, p. 159, l. 9-18].   Between the beginning of school and the first six week grading period J.W. got 88 in English, 85 and in Business related classes, 90 in Government, 93 in Art and Health even though he was never there. [DE# 8, p. 1654, 1717- 1719].

18.     In fact, he continued to pass his classes throughout the rest of the Fall and Spring 2018 semesters [DE# 8, 1654- 1658, 1660] even though he barely ever attended and graduated. [DE# 8, p. 1654, 1720- 1727].   On ongoing theme was that there was no date in any of the records to actually tell whether or not J.W. was making progress in any of his IEP's and classes anyway]. HTI, p. 108, l. 20-25; p. 109, l. 1-25; p. 110, 12-15].

19.     An ARD Committee Meeting was held in May of 2018.   It finally addressed a number of mother's concerns and admitted she had been given incorrect information about transfer activities in the past. The plan was for J.W. to transfer to another school, get into a new vocational program and work with the Texas Workforce Commission though the District would have to provide transportation, though staff said they would look into it. Mother asked for home training and a more formal vocational; assessment and graduate and return in the

fall [DE# 8, p. 1942- 1947] but he never did.  Taken together between the Spring of 2017,

Fall of 2017 and Spring of 2018 J.W. missed approximately 200 days. [DE# 8. P. 1710-.

1727].

H.     J.W.'S CURRENT STATUS

20.     Since the Tasing Cognitive Testing demonstrates his IQ went down. [DE# 8, p. 1961, p. 5,

l. 19- p. 6, l. 2].  As of the Hearing dates J.W. does not leave the family's home [DE# 8, p.

1963, p. 16, l. 16 - 18] and has no friends and won't even go to counseling anymore. [DE#

8, p. 2511, l. 24-25; p. 337, l. 1-5]. He quit going to church because the Church began having

security guards present during church services and he got scared. [DE# 8, p. 1964, p. 20, l.

2 - p. 23, l. 7; p. 111, l. 19 - 21; p. 2512, l. 6 to p. 2515, l. 1-25]. The last time he did go to

Church he became so incredibly upset, he began rocking back and forth, hitting himself in

the head and begging to leave, so the family did so. [DE# 8, p. 1987, p. 112, l. 23 - p.113, l.

14)]. Even though the rest of the family has regular gatherings J.W. is longer attends due to

his unresolved trauma. [DE# 8, p. 1990, p. 22, l. 5 - 8]. J.W. overeats to comfort himself, is

far less active and has gained approximately 100 pounds since he was in school.  [DE# 8, p.

1989, p. 119, l. 3 - 1].

I.     REMEDIES THAT LORI WASHINGTON WANTS FOR HER SON

21.     At the Hearing Ms. Washington asked the Hearing Officer to *Order* the District to fulfill its

duty and compensate her son with a *Free Appropriate Public Education* [DE# 8, p. 2534,

l. 5-25; through p. 2543]. This included a request for a *Full Independent Evaluation* ("FIE")

in all areas of his disability [DE# 8, 2340, l. 2-17] including for emotional and behavioral

needs [DE# 8, p. 2338, l. 8-12; p. 2339, l. 2], assistive technology [DE# 8, 2340, l. 12-17],

recreation and leisure [DE# 8, p. 2342,  l. 91-23] and social skills [DE# 8, p. 2343, l. 3-8]. All these are important because he is not engaging with the outside world, continues to struggle with academic tasks, like reading and math [DE# 8, p. 2343, l. 20-25; p. 169, l. 1] and has no work skills. [DE# 8, p. 2341, l. 1-3; p. 2342, l. 15-19].  Mother testified he recently had shown an interest in animals. Additionally, she believes he would benefit from counseling, as well as Family Counseling and In-Home & Family Support Services for everyone. [DE# 8,  p. 2345, l. 9-25]. Further, based upon all the time he missed school in she could like him to receive a couple of hundred hours in compensatory education [DE# 8, 2346, l. 7-15] and permit him to remain in school past his 22nd birthday to receive such services. [DE# 8, p. 2346, l. 12-25; p. 2347, l. 1-2].

## V.  <u>BURDEN OF PROOF</u>

22.    The Supreme Court has held that the *burden of proof* in a case dealing with FAPE under the IDEA, the burden falls upon the party bringing the claim in the first instance. <u>Schaffer v. Weast</u>, 126 S. Ct. 528; 546 U.S. (2005).

## VI.  <u>STANDARD OF REVIEW</u>

23.    Under the IDEA, "any party aggrieved by the finding and decision made by a Hearing Officer following an impartial due process hearing, shall have the right to bring a civil action with respect to the complaint presented." 20 U.S.C. §1415(i)(2)(A),(3). Accordingly, the court shall (i) receive the records of the administrative proceedings; (ii) hear additional evidence at the request of a party; and (iii) grant such relief as it determines appropriate based upon the preponderance of the evidence. *See* 20 U.S.C. § 1415(i)(2)(B).*See* <u>Cypress-Fairbanks ISD v. Michael F.</u>, 118 F.3d 245, 252 (5th Cir. 1997) *citing* <u>Bd. of Educ. of Hendrick Hudson</u>

Central Sch. Dist. v. Rowley, 458 U.S. 176, 206, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982).

24.   While the District Court must give the Hearing Officer's findings "due weight," it must make an independent, "virtually *de novo*" decision based on preponderance of the evidence before it. 20 U.S.C. § 1415(i)(2)( c).   In applying the "due weight" standard, "the Hearing Officer's findings are not conclusive and the court may take additional evidence and reach an independent conclusion based on the preponderance of evidence." Teague ISD v. Todd L., 999 F.2d 127, 131 (5th Cir. 1992).

25.   Where a hearing officer's findings are not supported by the record, as has occurred in this cause, and the record supports contrary findings, the court should reverse and vacate the hearing officer's decision.  *See* Carlisle Area School v. Scott P. by and through Bess P., 62 F.3d 520, 528 (3rd Cir. 1995), *cert denied,* 517 U.S. 1135 (1996).  Moreover, any due weight and deference a reviewing court may have is not implicated with respect to *issues of law*, such as the proper interpretation of the federal and state statutes and rules, and their requirements." Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ., 397 F.3d 77, 82 (2d Cir.2005).  In this case, the Hearing did both, made findings of fact not found in the record and as to such findings did not apply the law correctly. Accordingly, this Court should give little, if any deference to the Hearing Officer's decision. With all this in mind, Plaintiffs proceed accordingly.

## VII.  STANDARDS TO DETERMINE A FREE APPROPRIATE PUBLIC EDUCATION

26.   The IDEA requires schools to provide a *Free Appropriate Public Education* ("FAPE") which is made up of special education, physical education and related services to address the student's unique needs, 20 U.S.C §1400(d)(1); §1412(a)(1)(A). After a child is identified as

disabled, the state must develop, review, and revise an "individualized education program" that meets the requirements of the Act. Id. §1412(a)(4). The program must comply with the procedures of the Act and be "reasonably calculated to enable the child to receive educational benefits." Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley, 458 U.S. 176, 206-07, 102 S. Ct. 3034, 3051, 73 L. Ed. 2d 690 (1982).

27.     The FAPE requirement has both a procedural and substantive requirement. A procedural violation warrants a finding a school failed to provide FAPE when causing a loss of educational opportunity, Adam J. b/n/f Mr. & Mrs. J. v. Keller Indep. Sch. Dist., 384 F.3d 804, 809 (5th Cir. 2003) *citing* Daniel R.R. v. State Bd. Of Educ., 874 F.2d 1036, 1041 (5th Cir. 1989) to the student (or parent), though this loss must be more than *de minimus*. Houston Indep. Sch. Dist. v. Bobby R.R., 200 F.3d 341 (5th Cir. 2000).

28.     In Cypress-Fairbanks Independent School District v. Michael F., 118 F3d 245 (5th Cir.), *cert. denied*, 522 U.S. 407 (1998) the 5th Circuit refined the standard for FAPE; *see also* Endrew F. V. Douglas County School Board, Re-1, 137 S. Ct. 988, (2017). Specifically, the student's *Individualized Educational Plan* ("IEP") program must provide services to the student in the least restrictive environment; must provide academic and non-academic benefits, be developed in collaboration with key stakeholders and overall, be commensurate with the unique and individualized needs of the child.

### VIII.  THE DUE PROCESS HEARING AND HEARING OFFICER DECISION

29.     On August 24th and 25th 2020, the Special Education Hearing Officer convened a *Due Process Hearing* set at Docket N0. 237-0320.  For Plaintiffs, the most relevant portions of the factual resume are noted above.  The Hearing Officer had characterized Petitioners'

substantive allegations generally to whether or not J.W. experienced a hostile educational environment because of bullying [DE# 8, p. 0002] and whether the Katy ISD failed to implement J.W.'s *Individualized Educational Plan* ("IEP") and *Behavioral Intervention Plan* ("BIP") to address the his behaviors [DE# 8, p. 0003]. The procedural violations contemplated whether the District's failure to convene an *Admission, Review & Dismissal Committee* ("ARD") *Meeting* impeded J.W.'s mother ability to participate in decision-making regarding the provision of FAPE to J.W. and whether the District failed to address the effects of the tasing J.W. experienced including the refusal to convene an ARDC Meeting and when they did meet, to discuss the tasing at all. [DE# 8, p. 003]. J.W. provided a Closing Brief [DE# 8, p. 1543- 1569] as did the School District. [DE# 8, p. 1518- 1541].

30.   The Hearing Officer issued a decision on October 23, 2020. The HO reiterated the issues to be determined. Most specific and germane to this appeal was the substantive issues as to whether or not the District implemented J.V.'s *Individualized Educational Plan* and *Behavioral Intervention Plan* and the procedural issue as to whether or not the District failed to convene an ARDC Meeting in a timely manner which impeded mother's opportunity to participate in the collaborative process in developing an IEP and provide J.W. a FAPE and/or appropriately respond to the trauma experienced after the tasing, either or both affecting J.W'S right to a FAPE. [DE# 8, p. 002-003].

31.   In a rather selective *Findings Of Fact* ("FOF") the Hearing Officer noted (and regarding issues most germane to this appeal) that J.W. attended 10 days of school in January of 2017, one day in February, (none in April), three days in May and one in June and missed 89 days that semester. [DE# 8, p. 0007-0008, ¶15, fn. # 27]. The Hearing Officer wrote that J.W. did

attend summer school to make up the credits for English III but did not return for the second part of the summer semester. [DE# 8, p. 0011, ¶31, fn. #64]. Further, that when J.W. did attend school he passed his classes though he did fail most of his classes the 4th six weeks of the 2016-2017 school year. But during the 2017-2018 school year, J.W. passed all his classes with mostly As and Bs. [DE# 8, p. 0011, ¶32, fn. 65]. Last, that J.W. attended a graduation ceremony and received a certificate of completion of four years in May 2018. [DE# 8, p. 0011, ¶32, fn. 67].

32.    In the *Discussion Section* [starting at DE# 8, p. 0012] and in regard to analyzing the issue of whether or not J.W. received Academic Benefit the Hearing Officer wrote "the evidence showed Student did receive academic and non-academic benefit. When Student attended school, he was successful academically. He had mostly A's and B's in 2017-2018 and earned enough credits in high school to graduate. Student received job training skills and was learning how to deal with his misperceptions from the LSSP. Had Student attended school more regularly, he may have benefitted even more." [DE# 8, p. 0014-0016]. In regard to whether or not an ARDC was convened in a timely manner, the Hearing Officer accepted the District's blame of J.W.'s mother for that failure too. [DE# 8, p. 0017- 21].

33.    In regard to whether or not the alleged procedural violations of the IDEA rise to the substantial violation of J.W.'s right to a FAPE the Hearing Officer wrote that "the parents refused to let the School District speak Student's outside providers" [DE# 8, p. 0020] though that was absolutely false. The Hearing Officer wrote that "student received psychological services after" the incident and "one-to one help from the LSSP" [DE# 8, p. 0020] but there is no evidence, aside from talking about providing either, it ever was. In another effort to

degrade J.V.'s mother the Hearing Officer wrote that the "parent never provided any expert testimony or documents connecting Student's anxiety and the tasing incident." [DE# 8, p. 0020]

## IX.  <u>ARGUMENT AND AUTHORITIES</u>

34.     J.W. incorporates by reference all the above-noted paragraphs as if fully set for th herein, and likewise incorporates by reference, for each paragraph below, the one before it.

35.     The IDEA requires schools to provide a *Free Appropriate Public Education* ("FAPE") which is made up of special education, physical education and related services to address the student's unique needs, 20 U.S.C §1400(d)(1); §1412(a)(1)(A). After a child is identified as disabled, the state must develop, review, and revise an "individualized education program" that meets the requirements of the Act. Id. §1412(a)(4). The program must comply with the procedures of the Act and be "reasonably calculated to enable the child to receive educational benefits." <u>Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley</u>, 458 U.S. 176, 206-07, 102 S. Ct. 3034, 3051, 73 L. Ed. 2d 690 (1982).

36.     In <u>Cypress-Fairbanks Independent School District v. Michael F</u>., 118 F3d 245 (5th Cir.), *cert. denied*, 522 U.S. 407 (1998) the 5th Circuit refined the standard for FAPE; *see also* <u>Endrew F. V. Douglas County School Board, Re-1</u>, 137 S. Ct. 988, (2017). Specifically,  the student's *Individualized Educational Plan* ("IEP") program must provide services to the student in the least restrictive environment, must provide academic and non-academic benefits, be developed in collaboration with key stakeholders and overall, be commensurate with the unique and individualized needs of the child.

37.     The FAPE requirement has both a procedural and substantive requirement. A procedural

violation warrants a finding a school failed to provide FAPE when causing a loss of educational opportunity, <u>Adam J. b/n/f Mr. & Mrs. J. v. Keller Indep. Sch. Dist.</u>, 384 F.3d 804, 809 (5th Cir. 2003) *citing* <u>Daniel R.R. v. State Bd. Of Educ.</u>, 874 F.2d 1036, 1041 (5th Cir. 1989) to the student (or parent), though this loss must be more than *de minimus*. <u>Houston Indep. Sch. Dist. v. Bobby R.R.</u>, 200 F.3d 341 (5th Cir. 2000).

38.    In regard to both the substantive and procedural requirements that must be addressed, the overall education of the student and their benefit from the special education services provided BY THE School District, if any, is paramount.  In short, this Court must use a *holistic perspective* when reviewing J.W.'s IEP, his entire the high school record, the assessments provided and the administrative record, when determining whether or not FAPE was provided. <u>Klein Indep. School Dist. v. Hovem</u>, 690 F.3d 390, 391 (5th Cir. 2012).  J.W. posits that when this Court uses this perspective the Hearing Officer's Decision was will be rejected and J.W.'s appeal granted.

B.    THE SCHOOL DISTRICT FAILED TO PROVIDE J.W. ACADEMIC AND NON-ACADEMIC BENEFITS FOR THE SPRING OF 2017 SEMESTER

39.    IDEA guarantees only a "basic floor" of opportunity, "specifically designed to meet the child's unique needs, supported by services that will permit him to benefit from the instruction." <u>Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley</u>, 458 U.S. 176, 188-189 (1985); *see also* <u>Richardson Indep. Sch. Dist. v. Michael Z.</u>, 580 F.3d 286, 292 (5th Cir. 2009) (citations omitted). An IEP need not be the best possible one, nor does it entitle a disabled child to a program that maximizes the child's potential. <u>Michael F.</u>, 118 F.3d at 247-48. Nevertheless, a school district must provide the student with a meaningful educational benefit. *See* <u>Hous. Indep. Sch. Dist. v. V.P. ex rel. Juan P.</u>, 582 F.3d 576, 583

(5th Cir. 2009) *citing* <u>Michael F.</u>, 118 F.3d at 248 (5th Cir. 1997).  While  the 5th Circuit has

not held that the district courts are required to consider them or to weigh them in any

particular way," <u>Michael Z.</u>, 580 F.3d at 293, the provision of academic and non-academic

benefit from this *holistic* perspective is obviously most important.

40.     The Hearing Officer characterized the issue as to:

 "Whether the School District failed to implement the Student's *Individualized*

*Educational Plan* and *Behavioral Intervention Plan* .... ?

The answer based upon the record is absolutely "no."   For the Spring 2017 semester J.W,

for all practical purposes was never there. There is no record, nor could there be that the

School District *implemented* (emphasis added) J.V.'s IEP or BIP in the Spring of 2017

because he wasn't there to have it implemented.  In fact, he received zeroes in all his classes.

There is no way that J.W. received academic or non-academic benefit that semester.

Importantly, the School District's own Special Education Director admitted that J.W. could

not receive any academic benefit when he was not there. There is no way J.W. received a

*Free Appropriate Public Education* that semester.  None. The Hearing Officer's finding that

the District did *implement* the IEP and/or BIP is absolutely a "clear error."   On this issue

alone J.W.'s appeal can and should be granted.

C.     THE DISTRICT FAILED TO PROVIDE J.W. ACADEMIC AND NON-ACADEMIC
        BENEFITS FOR THE FALL 2017 AND SPRING 2018 SEMESTERS

41.     J.W. incorporates by reference as if sully set forth in the legal principles set forth in the

above-noted paragraph. In regard to the facts, they too are substantially similar.  For the Fall

2017 and Spring 2018 Semester once again, J.W. was for all practical purposes, never there.

There is no data in the record that the School District *implemented* J.V.'s IEP or BIP in the

Fall as, once again, he wasn't there to have it implemented.  He passed his classes not because he fulfilled IEP goals but because the few times he was in attendance, he did well. Once again, as he was not there was no way J.W. received academic or non-academic benefit that semester.  Again the District's Special Education Director admitted that J.W. could not receive any academic benefit when he was not there.  Again, the Hearing Officer's finding that the District did *implement* the IEP and/or BIP is absolutely a "clear error."  Hill v. District of Columbia, 14-cv-1893, 116 LRP (D.C., August 26, 2016)[finding that a homeless student's repeated absences did not excuse the district's failure to provide him the services set forth in his IEP].  On this issue alone regarding the Fall of 2017, especially in concert with the failure of the District to provide J.W. FAPE in the Spring of 2017, this appeal can be granted.

D.    OVERALL THE DISTRICT FAILED TO PROVIDE J.W. A FAPE

42.    In determining whether or not the Katy Independent School District provided J.W. a *Free Appropriate Public Education* the Fifth Circuit in *Michael F.* asks a reviewing Courts to review the Students IEP to assure, over all it is "be commensurate with the unique and individualized needs of the child." In Hovem the Fifth Circuit *fine-tuned* the analysis so that Court must review the entire educational record to assess what benefit J.W. received.  Here the records is clear that the answer is none.

43.    For instance, the record is also clear J.W. had a major absenteeism problem, yet a review of every ARD Committee held in the Spring of 2017, the Fall of 2017 and the Spring evidences there was no specific IEP put in place to address this over-riding issue. Garris v. District of Columbia, 210 F. Supp. 3d 187 (D.C., September 28, 2016); The District could have

considered and provided any number of means to address this issue; for instance the use of home-bound services, a web camera, tape recording of classes, a tutor or even the provision of residential treatment services, but did not. Flour Bluff Independent School District v. Katherine M., 91 F.3d 689, 690- 694; CITE *accord* S.H. v. State Operated School District of Newark, 336 F3d 260, 272 (3rd Cir. 2003).

44. Mother asked over and over again to speak to someone to find out about what happened in the classroom that led to the tasing of J.W. in the hope that knowledge would avoid a reoccurrence. When the ARDC met in the Spring of 2017 it refused to do so arguing that group did not address disciplinary matters. Nonsense, that is exactly what an ARDC is required to do. Caldwell Independent School District v. Joe P., 551 F. App'x 140, 62 IDELR 192 (5th Cir. 2014)[ finding violation of IDEA where District was "oblivious" to child's needs]. The District's recalcitrance on this issue in particular evidences the results were

45. The failure of the ARDC to address all these important items evidence that the results of the Spring and Fall 2017 ARD Committee Meetings were predetermined, Deal v. Hamilton County Board of Education, 392 F3d 840 (6th Cir. 2004) a clear violation of the Michael F. requirements.

46. In a related vein, mother asked over and over again the District address his trauma. Cedar Rapids Community School District v. Gwinnett, 526 U.S. 66; 119 S. Ct., 992 (1999)[district has a duty to accommodate student's medical needs] but failed to do so. Instead of providing J.W. a new psychological assessment they relied upon what is termed a *REED* from a decade before. When given the opportunity to address his trauma the Counselor came back with a report it wasn't necessary even though in light of mother's requests and his absenteeism it

was obvious he did.  *See* <u>A.W. Middletown Area Sch. Dist</u>. 1:13-cv-2379, 115 LRP 4105

(M.D. PA. Jan. 28, 2015)[District must provide necessary evaluations or assessments to help

identify academic, non-academic, related and supplementary services a student may require];

71 Fed. Reg. 46, 548 (2006).

47.     The failure of the ARDC to address all these important items evidence that the results of the

Spring and Fall 2017 ARD Committee Meetings were predetermined, <u>Deal v. Hamilton

County Board of Education</u>, 392 F. 3d 840 (6th Cir. 2004) a clear violation of the <u>Michael

F.</u> requirements.

48.     Here the District also was on notice of mother's concerns and her own difficulties in dealing

with her son and later homelessness. Nevertheless they failed to address this issue as well.

*See, e.g.*, <u>El Paso Indep. Sch. Dist.</u>, 34 IDELR 226 (SEA TEX 2001) ["The school district

should consider whether the addition of parent training would be an appropriate related

service in meeting [the child's] needs as he enters into young adulthood."]; <u>M.E. and T.E. v.

New York City Dep't of Educ.</u>, CITE 71 IDELR 125 (S.D. N.Y. 2018)[school district's

failure to include parent counseling and training in the student's IEP did not constitute a

denial of FAPE where the district otherwise provided a comprehensive parent training

component].

49.     The record is also clear that because J.W. barely attended school the grades he received for

the Spring of 2017, the Fall of 2017 and the Spring 2018 were without any actual basis in

fact.  There was no data to support them.  The record evidences there was no specific plan

put in place to address all the class time he missed. Instead  the District permitted him to

graduate even though he did not actually complete any course work that his graduation plan

required. In fact, Staff actually steered J.W. into a *sham* graduation purely for social reasons, and not because it was deserved. *See* <u>Hovem</u>, *Dissent* of Justice Carl E. Stewart at 690 F.3d at p. 399 writing that even though that student had 142 IQ, graduated high school and went on to college, his IEP was unchanged for three years, he was excepted from all written and waived state wide exam requirements and other graduation requirements created grave "policy implications." The Justice was particularly concerned that students be prepared for pst-graduation challenges. <u>Id</u>. at 405- 407; <u>D.B. v. Bedford Cnty. Sch. Bd.</u>, 708 F. Supp. 2d 564, 584 (W.D. Va. 2010)[Although the [hearing officer] observed that D.B. was promoted a grade every year, [he] failed to comprehend that this token advancement documents, at best, *a sad case of social promotion*."); <u>Nein v. Greater Clark Cnty. Sch. Corp.</u>, 95 F. Supp. 2d 961, 977-78 [concluding that, because dyslexic student "was graded on a modified scale and his tests and quizzes were modified, often being read to him aloud because he was unable to read them, . . . [his] promotions to the next grade level are not evidence of educational benefit]; <u>Smith v. Parham</u>, 72 F. Supp. 2d 570, 576 (D. Md. 1999) ("[A]dvancement from grade to grade should not be the only factor considered when determining whether a child is receiving an educational benefit."); <u>Carl D. v. Special Sch. Dist.</u>, 21 F. Supp. 2d 1042, 1053 (E.D. Mo. 1998) ["Achievement of passing marks and advancement from grade to grade are important- but not dispositive- factors in assessing educational benefit."]. The truth is that this case *a sad case of social promotion* which this Court can and should remedy.

## X. <u>RELIEF REQUESTED</u>

50.    Compensatory education is an equitable remedy designed to compensate a student for

services not received when the student is denied FAPE. An award of compensatory education is within the authority an Independent Hearing Officer and of course, the District Coiurt. <u>Cocores v. Portsmouth New Hampshire Sch, Dist</u>., 779 F. Supp. 203 (D.N.H. 1991). The remedy is designed to "place disabled children in the same position they would have occupied but for the school district's violations of the IDEA." <u>Mary McLeod Bethune Day Academy Public Charter School v. Bland</u>, 555 F. Supp.2d 130 (D. D.C. 2008); <u>Reid v. D.C.</u>, 401 F.3d 516 (D.C. Cir. 2005).

51. First, even though J.W. has graduated the District has a duty to provide him post-graduation transition services. <u>Joaquin v. Friendship Public Charter School</u>, 14-01119 (D.C.C., September 3, 2015); <u>San Dieguito Union High Sch. Dist. v. Guray-Jacobs</u>, 04cvl330 DMS (S.D. CA, October 27, 2005).

52. Second, and based upon the obvious injuries J.W. received at the hands of District personnel and their abject failure in addressing them over many years, the School District should be required to pay for J.W. to benefit from residential treatment services. <u>Edmonds School District v. A.T.</u>, 299 F. Supp. 3d 1135 (W.D. WA, November 7, 2017) *aff'd* 780 F. App'x 491 (9th Cir. 2019) to help him reintegrate into society.

53. Third and importantly, the Court must consider that J.W. missed, for all practical purposes the Spring and Fall 2017 School Semesters, as well as the Spring 2018 Semester, totaling well over 200 days. J.W. was born on June 29, 1999. He graduated in the Spring of 2018 when he was eighteen (18) just short of nineteen (19) years old. Under the IDEA he could have stayed in school up to and through his 22nd birthday, *see* 20 U.S.C. §1412(a)(1)(A); 34 C.F.R. §300.101(a), or otherwise though June of 2022. There are approximately 140 hour

in each school year or for J.W. another 420 hours.  Taken together for the period before he graduated (200 hours) is together over 600 hours.

54.     Courts tend to apply one of two approaches to calculating awards of compensatory education, day-for-day; or totality of the circumstances.  Under the "day-for-day" method, the length of time of the compensatory education award equals the length of the inappropriate placement or denial of services measured in weeks, months, or even years. *See* R.S. v. Board of Dirs. of Woods Charter Sch., 806 F. App'x 229 (4th Cir. 2020, unpublished) [holding that the school was not required to fund the student's private compensatory services for more than one school year, the amount of time it denied the student FAPE]; *see also* Jana K. V. Annville Cleona School District, 39 F. Supp. 3d 584 (M.D. PA, August 18, 2014)[denial of FAPE entitled the student to a full day of compensatory education for each day she went without appropriate services].

55.     Other courts, applying a "totality of the circumstances" approach, have held that a student with disabilities is entitled to only so much compensatory education time as is required to provide him with an appropriate education.  Parents of Student W. v. Puyallup Sch. Dist. No.3, 31 F.3d 1489 (9th Cir. 1994). In regard to either the assessment as to the correct amount and type of compensatory services is an exercise in the equitable duties of a District Court and"that should aim to put the student back in the same position they would have occupied but for the School District's violation of the IDEA. Reid v. District of Columbia, 401 F. 3d 516 (D.C.C. March 25, 2005).

56.     A Special Education Hearing Officer in 2011 reduced the compensatory education services with a pecuniary value, finding at that time tutoring was in the $80 an hour range, and that

professional services (i.e., speech, psychological and mental health services) was in the $125- to $150 an hour range. *See* Student v. Southwest Region School District, Alaska State Educational Agency, 112 LRP 22779 (April 11, 2011) *citing* Parents of Student W; *see also* W.G. v. Board of Trustees of Target Range Sch. Dist., 960 F.2d 1479, 1486 (9 th Cir. 1992) [conduct of both parties must be reviewed in fashioning equitable relief],

57.     Accordingly the Court should reduce the compensatory award of 620 days times approximately six (6) hours a day times $100 an hour (rounded off) to $372,000 plus interest. Additionally, the Court should declare J.W. a prevailing party to include attorneys fees for TEA Docket Number Causes No. 078-SE-1217; Civil Action No. 4:18-cv-2752; 237-SE-0320 and this cause, Civil Action No. 4:21-cv-204. See 20 U.S.C. §1415(i)(3)(A), (B)((i)(I);  Buckhannon Board & Care Home, Inc. v. West Virginia, 532 U.. 598 (2001); *see, e.g.*, El Paso Indep. Sch. Dist. v. Richard R., 591 F.3d 417, fn. 4, (5th Cir. Tex. 2009).

## XI. CONCLUSION AND PRAYER

58.     In Draper v. Atlanta Independent School System, 518 F.3d 1275 (11th Cir. 2008) a case with significant similarities the Good Judge wrote:

"This appeal reminds us of words written by the late Judge John Minor Wisdom about a denial of educational opportunity in a different era: 'A man should be able to find an education by taking the broad highway. He should not have to take by-roads through the woods and follow winding trails through sharp thickets, in constant tension because of the pitfalls and traps, and, after years of effort, perhaps attain the threshold of his goal when he is past caring about it.' Meredith v. Fair, 298 F.2d 696, 703 (5th Cir. 1962)."

59.     Based upon any and all of the above arguments, whether individually or in concert with each other, J.W. has shown that the Hearing Officer erred when determining he received a *Free Appropriate Public Education* during the time periods in questions.  As such, his *Motion For*

*Summary Judgment* and APPEAL should be GRANTED.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Court enter a judgment reversing and vacating the Hearing Officer's decision and find that Plaintiffs did meet their burden of proof, address compensatory and remedies for J.W., award Plaintiffs expenses and attorneys fees, and any other and further relief as the Court determines is appropriate, whether at law or equity or both.

Respectfully submitted,

*/s/ Martin J. Cirkiel*
Martin J. Cirkiel, Attorney
State Bar No.: 00783829
marty@cirkielaw.com [Email]

Holly Griffith Terrell, *Of Counsel*
State Bar No. 24050691
holly@cirkielaw.com [Email]

Cirkiel & Associates, P.C.
1901 E. Palm Valley Boulevard
Round Rock, Texas  78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]

Drew Willey, Attorney
State Bar No.: 24093371
Drew Willey Law
1520 Rutland Street
Houston, Texas 77008
(713) 739-9455 [Telephone]
(713) 510-1950 [Facsimile]
drew@law-dw.com [Email]

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served upon all counsel of record listed below through the Court's ECF filing system on this the 16th day of November, 2021.

Mr. Christopher B. Gilbert, Attorney & Counselor At Law
State Bar. No. 00787535
So. Dist. No. 17283
cgilbert@thompsonhorton.com  [Email]; and
Ms. Hailey R. Janecka, Attorney & Counselor At Law
State Bar. No. 24099491
So. Dist. No. 3151241
hjanecka@thompsonhorton.com [Email] both of
Thompson & Horton LLP
3200 Southwest Freeway
Suite 2000
Houston, Texas 77027
(713) 554-6744 [Telephone]
(713) 583-7698 [Facsimile]
Attorneys For Katy Independent School District

/s/ Martin J. Cirkiel
Martin J. Cirkiel